FILED'11 MAY 12 15:52USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LARRY A. DERR,

        Plaintiff,

    v.

DJO, L.L.C., a Delaware corporation;
DJO, INCORPORATED, a Delaware
corporation; I-FLOW CORPORATION,
a Delaware corporation,

        Defendants.

Civ. No. 10-1482-AA
OPINION AND ORDER

---

AIKEN, Chief Judge:

    Plaintiff filed suit alleging negligence and strict products liability arising from the post-operative use of a pain pump device. Plaintiff alleges that defendants I-Flow Corporation (I-Flow) and DJO, LLC (DJO) are liable as the manufacturer and/or distributor of the pain pump, and that both defendants are jointly liable under the theory of civil conspiracy. Before the court are I-Flow's motion to dismiss plaintiff's civil conspiracy claim and plaintiff's motion to amend and add a claim for punitive damages. I-Flow's motion is denied with leave to renew, and plaintiff's motion is granted.

1 - OPINION AND ORDER

DISCUSSION

Plaintiff alleges that following arthroscopic shoulder surgery on November 12, 2003, a surgeon implanted a pain pump catheter into his shoulder joint to administer a continuous infusion of local anesthetics for 48 hours or longer. Plaintiff alleges that this use of the pain pump caused him to develop chondrolysis, a painful and disabling condition involving the loss of cartilage in the shoulder joint.

Plaintiff alleges claims of strict products liability, negligence, and civil conspiracy against I-Flow and DJO. Plaintiff premises his civil conspiracy claim on an alleged agreement between I-Flow and DJO to "promote the pain pumps for orthopedic use, in violation of [Food and Drug Administration] regulations." Am. Compl., p. 12. ; see Osborne v. Fadden, 225 Or. App. 431, 437-38, 201 P.3d 278 (2009) (describing civil conspiracy as "a combination of two or more persons" who, through "concerted action," intend to accomplish an unlawful purpose or a lawful purpose through unlawful means). Plaintiff alleges that I-Flow and DJO knew that the Food and Drug Administration had not approved the pain pumps for orthopedic use, and that I-Flow and DJO nonetheless "agreed that if apprehended, they would claim that orthopedic use was included within the general use permitted by the agency - despite the fact that regulatory consultants advised that orthopedic use was not permitted." Am. Compl., p. 12. Finally, plaintiff alleges that the purpose of I-Flow and DJO's conspiracy was to cause harm to orthopedic patients:

> I-Flow and DJO defendants acted with a primary purpose of causing injury to orthopedic patients, and consciously put orthopedic patients' safety and lives at risk by selling pain pumps to orthopedic surgeons, contrary to the FDA's directive. . . . The primary purpose of conducting an illegal experiment on the plaintiff and others like him was to cause injury to him.

Am. Compl., p. 12.

2 - OPINION AND ORDER

Defendants argue that plaintiff includes the latter allegations to avoid dismissal of this claim pursuant to the court's prior rulings in <u>Dean v. DJO</u>, Civ. No. 09-1193-AA (D. Or. May 17, 2010) and <u>Flint v. DJO, LLC</u>, 09-1393-AA (D. Or. May 17, 2010). In <u>Dean</u> and <u>Flint</u>, the plaintiffs similarly alleged that they developed chondrolysis in their shoulder joints after the intra-articular use of pain pumps. The plaintiffs also alleged a civil conspiracy claim against I-Flow and DJO based on the same course of conduct at issue in this case. However, in <u>Dean</u> and <u>Flint</u>, the plaintiffs alleged that the purpose of I-Flow's and DJO's conspiracy was to make a profit - not to cause harm to orthopedic patients. The court dismissed the civil conspiracy claims in those cases, because under Oregon law, a plaintiff must allege and establish that the purpose of the conspiracy was to cause harm. <u>See</u> <u>Granewich v. Harding</u>, 329 Or. 47, 57-58, 985 P.2d 788 (1999) (those who conspire to commit a tort upon another may be held liable as joint tortfeasors); <u>Bonds v. Landers</u>, 279 Or. 169, 174, 566 P.2d 513 (1977) ("The primary purpose of a conspiracy must be to cause injury to another."); <u>Bliss v. So. Pac. Co.</u>, 212 Or. 634, 641, 321 P.2d 324 (1958) (accord); <u>Yanney v. Koehler</u>, 147 Or. App. 269, 275, 935 P.2d 1235 (1997) ("Assuming that plaintiffs alleged that there was a meeting of the minds on that goal, the primary purpose of that agreement was not to injure plaintiffs ...."); <u>see also</u> <u>Bridges v. United States Dep't of Agric.</u>, 2003 WL 25804199, at *3 (D. Or. Aug. 7, 2003); <u>Noel v. Hall</u>, 2000 WL 251709, at *7 (D. Or. Jan. 18, 2000). I-Flow argues that the allegations in this case are without factual basis, facially implausible, and preempted by federal law.

Given the evidence adduced during trial in other pain pump cases regarding defendants' actions in promoting the pain pumps, I agree with I-Flow that plaintiff's civil conspiracy claim is unlikely to succeed. No evidence presented during the previous trial suggested that DJO or I-Flow conspired to commit a tort against orthopedic patients such as plaintiff, or that they acted for the

primary purpose of causing harm. Nonetheless, I cannot take judicial notice of such evidence, and at this stage of the case, the court must accept the alleged facts as true and construe all reasonable inferences in favor of plaintiff. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Lee v. Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Fed. R. Evid. 201. So construed, plaintiff's allegations are "plausibly suggestive of a claim entitling [plaintiff] to relief," Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009), even if "recovery is very remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (internal quotation marks and citation omitted). Further, I do not find plaintiff's claim preempted, because it is not premised on fraudulent statements made to a federal agency or dependent solely on alleged violations of federal regulations. Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 351-53 (2001). Once fact discovery is complete, I-Flow again may seek dismissal of this claim.

However, I grant I-Flow's motion to strike plaintiff's prayer for attorney fees. Plaintiff alleges no basis to support an award for attorney fees and apparently concedes this point, as his proposed Second Amended Complaint does not include a prayer for attorney fees. Motion to Amend, Ex. 1, p. 17.

Finally, consistent with the court's prior rulings, plaintiff's motion to amend is allowed in light of his allegations, though the court is mindful of the lack of evidence presented at the previous pain pump trial to support an award of punitive damages. Nevertheless, leave to amend is to be freely granted absent undue delay, bad faith, prejudice, or futility. Fed. R. Civ. P. 15(a) (2); Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004). I cannot find undue delay or prejudice given that amendment will not dramatically alter the parties' discovery efforts and preparation for trial. With respect to futility, at this stage of the proceedings I will not engage in fact-finding that is best left for

the trier of fact. Defendants may move for summary judgment on the issue of punitive damages after

the close of fact discovery or for judgment as a matter of law at the conclusion of trial.

### CONCLUSION

I-Flow's Amended Motion to Dismiss and to Strike (doc. 74) is DENIED with leave to renew

with respect to plaintiff's civil conspiracy claim and GRANTED with respect to plaintiff's prayer

for attorney fees.  Plaintiff's Motion to Amend (doc. 85) is GRANTED to the extent plaintiff may

add a prayer for punitive damages, rather than a claim for punitive damages.

IT IS SO ORDERED.

DATED this ___12___ day of May, 2011.


_____

Ann Aiken
United States District Judge